# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAMALIER RIVERA, | Case No. 23 C 01743 |
| *Plaintiff*, | |
| | Hon. Judge Edmond E. Chang |
| v. | District Judge |
| | |
| REYNALDO GUEVARA, *et al.*, | Hon. Judge Sunil R. Harjani |
| | Magistrate Judge |
| *Defendants*. | |
| | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S OPPOSED, EXPEDITED MOTION TO LIMIT THIRD PARTY DEPOSITION FOR SERIOUS HEALTH CONCERNS

The Parties have agreed that a key witness in this case—Antonio Diaz, the only surviving victim of the April 22, 1996 shooting and one of four reported eyewitnesses to the shooting—must be deposed. After much exchange, the Parties have identified a date to do so. This motion concerns the only remaining dispute: how the deposition proceeds. It was immediately apparent to Plaintiff's counsel when interacting with Mr. Diaz in person two weeks ago that his health is precarious: he is confined to a hospital bed, residing in a medical rehabilitation center, with great difficulty speaking. But he is willing and able to sit for a deposition. Plaintiff seeks that the deposition goes forward in a manner that acknowledges Mr. Diaz's poor health, while allowing each side sufficient time to conduct their questioning of this critical witness. Plaintiff therefore requests that the Court limit Mr. Diaz's deposition to three hours on the record, with an opportunity to confer about a continuation of the deposition should the need arise.

Plaintiff files this motion on an expedited basis because the Parties have agreed to proceed with the deposition on November 11. It is critical that the deposition proceed on that

1

date. Given the severity of Mr. Diaz's observed condition, Plaintiff is deeply concerned about whether there will be an opportunity to preserve Mr. Diaz's testimony if it is delayed even several weeks.

## **BACKGROUND**

Mr. Diaz is the only surviving victim of the shooting that took place on April 22, 1996, ultimately resulting in Mr. Rivera's false conviction. Notably, he is also one of the three surviving eyewitnesses to that incident. Mr. Diaz viewed identification procedures during the Ramos homicide investigation in 1996 and testified in Mr. Rivera's criminal proceedings. The result of Mr. Diaz's identification procedure and his testimony have been referenced in Defendants' interrogatory responses regarding their contentions of whether Mr. Rivera committed the murder of Jesus Ramos and the shooting of Antonio Diaz, and whether there was probable cause for Mr. Rivera's arrest and prosecution. *See, e.g.,* Ex. A (Def. Biebel's Supp. Resp. to Plaintiff's Interrog.); Ex. B (Def. Riccio's Supp. Resp. to Plaintiff's Interrog.).

On October 9, 2024, counsel for Defendant Guevara served and noticed the deposition of Mr. Diaz. Ex. C (Notice of Dep.), Ex. D (Subpoena & Proof of Service). The subpoena was served to Mr. Diaz in a rehabilitation center called Meadowbrook Rehabilitation.[1] *See id*. Meadowbrook offers post-hospital rehabilitation services, and manages patients with "congestive heart failure, post-coronary artery bypass surgery, myocardial infarction (heart attack), and LVAD's," as well as management of "chronic obstructive pulmonary disease (COPD)), Pneumonia, Emphysema, Asthma and other respiratory diseases," renal management, and wound

---

[1] Meadowbrook Rehabilitation, https://meadowbrookrehabilitation.com/meadowbrook-naperville/ (Accessed Oct. 31, 2024).

management.[2] Counsel for Defendant Guevara indicated that the November 25, 2024 date was a placeholder date, and counsel did not subsequently offer a proposed date for the deposition.

With the fact discovery deadline fast approaching on November 28, 2024, *see* Dkt. 121, Plaintiff sought to understand Mr. Diaz's ability to participate in a deposition and visited him in Meadowbrook Rehabilitation on October 18, 2024. It was immediately apparent that Mr. Diaz has significant physical limitations. Mr. Diaz's declaration states that he is lying in a hospital bed; that "it is hard for [him] to speak;" and that he is even physically limited to the extent that he "cannot hold a pen." Ex. E (Oct. 18, 2024 Declaration). Despite those medical conditions, Mr. Diaz stated that he could "understand questions;" can speak "by talking slowly;" and was able to have a nurse "help [him] make a mark to sign" his declaration. *Id.* The full extent of Mr. Diaz's future medical and health condition is unknown. Out of respect for Mr. Diaz's privacy rights, Plaintiff's counsel did not inquire to the nursing staff as to the specifics of Mr. Diaz's health, and the Parties do not have access to his medical record. However, based on Mr. Diaz's appearance, Plaintiff's counsel developed a strong concern about his ability to partake in a deposition, which, without agreement by the Parties or a court order, could extend seven hours on the record, and multiple hours more due to breaks taken by the deponent and Parties.

In addition to attesting to his physical condition, Mr. Diaz's Declaration also reflected a different version of events than what is documented in police reports. Ex. E. His declaration states that he did not see who shot him in 1996, but that a "police officer pointed at one person to me" during the identification procedures and "told me that was the person that did it." *Id.* This is critical information to this case—and critical for the Parties to question Mr. Diaz about his recollection of this event.

---

[2] Care Services, Meadowbrook Rehabilitation, https://meadowbrookrehabilitation.com/care-services/ (Accessed Oct. 31, 2024).

To conduct a timely deposition of Mr. Diaz while safeguarding against undue burden due to his health, Plaintiff proposed that the deposition proceed imminently and that it be conducted for only one hour on the record. Ex. F at 10 (October 22, 2024 Correspondence). Plaintiff's counsel also proposed that Plaintiff only use 20 minutes on the record of that hour and that Defendants' counsel could have the majority of the time—40 minutes on the record. *Id.*

Given the time-sensitive nature of the deposition, Plaintiff requested a response within two days regarding this proposal. Defendants did not respond. Plaintiff followed up on the third day, asking for Defendants' position. Defendants offered to confer three days later, to which Plaintiff agreed. *Id.*

During that conferral, Plaintiff's counsel explained their concern for Mr. Diaz's health and their willingness to arrive at a solution that would accommodate their concerns for Mr. Diaz's health and allow the deposition to proceed. That concern is particularly important in this case, given that another eyewitness, who also provided a declaration attesting to the fact that the police officers used suggestive procedures during his identification procedures, passed away before he could be deposed. *See* Ex. G (Richardini Lopez Declaration).

Defendants' counsel rejected Plaintiff's proposal for a one-hour deposition, and counter-proposed that the Parties conduct the deposition in three hours, with an agreement to continue the deposition if necessary. Ex. F at 7. Defendants' counsel also indicated that they had spoken on the phone with Mr. Diaz where he did not verbally express concerns with sitting for a deposition, but conceded that they did not physically visit him in the rehabilitation center.

The next day, Plaintiff agreed to the three-hour limitation. *Id*. In fact, Plaintiff had previously agreed to Defendants' proposal of a three-hour time limitation for the deposition of a separate third-party in April 2024. Then, Defendants represented to Plaintiff that a third-party

4

officer, Mr. Gniot, had "medical issues" that limited his ability to sit for a deposition beyond "2-3 hours max." Ex. H (4/1/24 Correspondence from T. Carney). Based on that representation, Plaintiff agreed to a 3-hour deposition. Unlike Mr. Diaz, that third-party was not confined to a hospital bed in a rehabilitation center.

When agreeing to three hours for Mr. Diaz's deposition, Plaintiff's counsel stated that, "[w]hile we do not agree in advance to a continuation of the deposition beyond those three hours, we would, of course, be willing to confer on any continuation, should either party believe the need arises." *Id.* at 7. But Plaintiff then received a confusing response from Defendant's counsel:

> Defendants do not agree to impose time limits ahead of Mr. Diaz' deposition, especially where Plaintiff will not agree to the continuation of the deposition if Mr. Diaz indicates the need to pause the deposition in the first instance. The federal rules dictate the timing of the deposition, and we intend to proceed accordingly.

*Id.* at 3.

In a series of exchanges, Plaintiff made sure to clarify to Defendants' counsel that of course Plaintiff <u>agreed</u> to the continuation of the deposition if Mr. Diaz indicated the need to pause it. Ex. F at 3, 2. In Plaintiff's understanding, Defendants' agreement was conditioned on that explicit agreement:

> Again, Defendants do not agree to impose time limits ahead of Mr. Diaz' deposition, *unless Plaintiff will explicitly agree* to the continuation of the deposition *if* Mr. Diaz indicates the need to pause the deposition in the first instance.

*Id.* (emphasis added).

And Plaintiff so agreed. Yet after Plaintiff made that clear, Defendants then withdrew any willingness to reduce the time of Mr. Diaz's deposition, stating:

> Again, we are not agreeing to limit Mr. Diaz' deposition to a total of three hours. We intend to use the time necessary to depose Mr. Diaz as allowed under the rules.

5

*Id.* at 2.

Plaintiff and Defendants ultimately agreed to depose Mr. Diaz on November 11, 2024, and, to be clear, Plaintiff does not oppose Defendants questioning Mr. Diaz first. But the parties are at impasse on the duration of the deposition. With the understanding that Defendants now refuse to agree to any time limitation whatsoever, and in an effort to account for Mr. Diaz's condition while ensuring his critical testimony is obtained and preserved, Plaintiff filed this motion.[3]

## ARGUMENT

The Federal Rules provide that a deposition generally proceeds for "1 day of 7 hours" of deposition. Fed. R. Civ. P. 30(d)(1). That duration may be different if the Parties stipulate to such—as the Parties previously did for Mr. Gniot's deposition, and as Defendants refuse to do for Mr. Diaz—or unless the Court so directs. *Id.*

Rule 26(c) of the Federal Rules of Civil Procedure provides that the Court may issue an order protecting a party or person "from annoyance, embarrassment, oppression, or undue burden or expense," including in a deposition. Fed. R. Civ. P. 26(c)(1). An accommodation, such as a time limitation, can be used to ensure that a deponent's health is not put at risk, while avoiding the extreme measure of barring a deposition entirely. *See, e.g., Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. CV 11-2405, 2020 WL 13199433, at *2 (E.D. La. June 26, 2020) (enumerating conditions on deposition due to deponent's health); *Stanek v. St. Charles Comm. Unit Sch. Dist. # 303*, No. 13 C 3106, 2020 WL 1304828, at *4 (N.D. Ill. Mar. 19, 2020) (same); *Schorr v. Briarwood Estates Ltd. P'ship,* 178 F.R.D. 488, 492 (N.D. Ohio 1998) (same); *Cook v. Lynn & William, Inc.,* 344 F.R.D. 149, 154 (D. Mass. 2023) (finding deponent's medical

---

[3] On October 31, 2024, Defendants' counsel indicated they would be filing a response to the Motion.

difficulties constitute good cause for limiting deposition); *cf. Kamdem-Ouaffo v. Balchem Corp.*, No. 17CIV2810PMHPED, 2020 WL 8838038, at *8 (S.D.N.Y. Dec. 23, 2020), *report and recommendation adopted sub nom. Kamden-Ouaffo v. Balchem Corp.*, No. 17-CV-2810 (PMH), 2021 WL 1101126 (S.D.N.Y. Mar. 23, 2021) ("If harm to a witness from a deposition is of potential concern . . . courts can fashion accommodations to limit the potential harm to the deponent") (citation omitted).

Mr. Diaz's health concerns justify such a limitation. He is confined to a bed, cannot speak easily, and required assistance even to lift his hand. Plaintiff's request will ensure Mr. Diaz's deposition proceeds in a manner that does not cause the witness undue harm or harassment. Three hours on the record will allow both Parties sufficient time to question Mr. Diaz about his role in this case, without compromising Mr. Diaz's limited ability to speak. While the Parties will undoubtedly take breaks during the deposition, particularly if called for by Mr. Diaz, this record limitation will also safeguard against as-yet unknown risks to Mr. Diaz's health by partaking in a question-answer period for seven hours. Indeed, Defendants' alternative—seven hours on the record without limitation—could have severe consequences.

Plaintiff's position is also reasonable. Rather than returning to his initial proposal of a one-hour deposition, Plaintiff requests a time of a three-hour initial deposition *initially proposed by Defendants* in a continued effort to accommodate the health concerns made so apparent by visiting Mr. Diaz in person.

WHEREFORE, Plaintiff respectfully requests that the Court limit the deposition of third-party witness Antonio Diaz to three hours on the record, with an opportunity to confer about a continuation of the deposition should the need arise.

RESPECTFULLY SUBMITTED,

/s/ Meg Gould
*Counsel for Plaintiff*

Jon Loevy
Anand Swaminathan
Steve Art
Locke Bowman
Sean Starr
Meg Gould
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
gould@loevy.com

**CERTIFICATE OF SERVICE**

  I, Meg Gould, an attorney, hereby certify that on November 1, 2024, I caused the foregoing motion to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                /s/ Meg Gould
                *One of Plaintiff's Attorneys*