**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMALIER RIVERA, | ) | |
| | ) | Case No. 23-cv-01743 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Chang |
| v. | ) | Magistrate Judge McShain |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MOTION TO COMPEL THE COOK COUNTY STATE'S
ATTORNEY'S OFFICE TO COMPLY WITH RECORDS SUBPOENA**

Defendants Reynaldo Guevara, Anthony Riccio, Robert Biebel, and Geri Lynn Yanow, as

Special Representative for Ernest Halvorsen, deceased, and the City of Chicago (collectively

"Defendants"), by their undersigned counsel, move the Court to enter an order compelling the

Cook County State's Attorney's Office ("CCSAO") to comply with Defendants' subpoena by

producing certain records without redactions.

## INTRODUCTION

Plaintiff Gamalier Rivera's ("Rivera") underlying criminal prosecution for the 1996 murder of Jesus Ramos and shooting of Antonio Diaz is at the center of this case. Consequently, Defendant Officers subpoenaed the CCSAO for its entire file. After attempting to obtain compliance with the subpoena, Defendants now move to compel the CCSAO to produce "ASA Notes" and "Criminal History/LEADS" reports that it improperly redacted, and electronically stored information ("ESI") requested in the subpoena. As explained below, the CCSAO improperly redacted critical information related to the underlying prosecution that goes to the heart of the claims at issue, failed to search for relevant ESI despite its representations that it would do so, and has not provided a privilege log that complies with Rule 45. To be clear, these materials were subpoenaed over a year ago and efforts to obtain compliance from the CCSAO have gone on for months. Court intervention is necessary.

## BACKGROUND AND RULE 37.2 COMPLIANCE

Rivera contends that he was wrongfully prosecuted and convicted for the 1996 murder of Jesus Ramos and the shooting of Antonio Diaz. On August 16, 2022, Rivera's conviction was vacated, without opposition by the CCSAO, and the charges dropped during post-conviction proceedings. In March of 2023, he was granted a certificate of innocence ("COI"). Rivera brings suit against Defendants alleging they maliciously prosecuted him and deprived him of a fair trial by fabricating evidence, manufacturing witness testimony and withholding exculpatory evidence.

On December 4, 2023 Defendant Officers subpoenaed the CCSAO for its entire file related to Rivera's prosecution, conviction, post-conviction proceedings, including emails and electronic messages between the CCSAO and its agents. (Subpoena, attached as **Ex. A**, at 4−5, ¶¶ 13−14.) On December 11, 2023, the CCSAO acknowledged receipt of the subpoena. (CCSAO 12/11/2023 Letter, attached as **Ex. B**.) On December 20, 2023, the CCSAO produced 1564 pages of documents and privilege log. (CCSAO 12/20/2023 Letter, attached as **Ex. C**.) On March 19, 2024, the CCSAO

produced an additional 468 pages of documents, a corresponding privilege log and stated that it was closing its file. (CCSAO 03/19/2024 Letter, attached as **Ex. D**.) The privilege logs identify several categories of information withheld and/or redacted pursuant to various claims of privilege: (1) "ASA Notes;" (2) Criminal History/LEADS Reports; (3) medical records; (4) victim information; (5) "Grand Jury;" and (6) juvenile court information. (*See generally* CCSAO Combined Privilege Log, attached as **Ex. E**, at 1−3.)

In a letter dated May 10, 2024, Defendant Officers requested the CCSAO reconsider its claims of privilege and asked to confer. (05/10/2024 Letter, attached as **Ex. F**.) Of note, Defendant Officers explained that they could not properly evaluate the work product and deliberative process privilege claims over "ASA Notes" because the privilege log failed to identify the author of the notes, the dates they were created, or provide an explanation as to what the notes related to. (*Id.* at 2−3.)

The CCSAO responded and stood by its assertions of privilege but indicated that it would produce an "amended privilege log providing greater detail about the materials withheld." (05/21/2024 CCSAO Letter, attached as **Ex. G** at 2.) Defendant Officers received the revised log on June 13, 2024, but it again failed to identify any authors or dates for the "ASA Notes," nor did it adequately describe what the notes related to. (Revised Privilege Log, attached as **Ex. H**.)

On August 16, 2024, the CCSAO, represented by Mr. David Adelman, and Defendant Officers, represented by Elizabeth Fleming, conferred via video conference regarding the subpoena response and privilege claims. Mr. Adelman agreed to review the redacted materials to determine whether the CCSAO would continue to maintain its privilege claims and instructed counsel to propose search terms and custodians for the ESI request. (Email Correspondence with CCSAO, attached as **Ex. I**, at 19−21.) Following this conferral, Ms. Fleming proposed three ASAs who were involved in representing the State during Rivera's post-conviction and COI proceedings—Carol Rogala, Christa Bowden and Lisa Mateck—and five search terms: (1) Joshua Tepfer & "Gamalier Rivera;" (2) Steven

Art & "Gamalier Rivera;" (3) Anand Swaminathan & "Gamalier Rivera;" (4) Reynaldo Guevara & "Gamalier Rivera;" and (5) "Exoneration Project" & "Gamalier Rivera." (*Id.* at 20.)

Subsequent video conferrals occurred with Mr. Adelman and Ms. Fleming on August 26, 2024, September 16, 2024, and October 9, 2024. (*Id.* at 8, 15−16, 17−19.) During the August 26th conferral, Mr. Adelman admitted that the CCSAO improperly redacted pages and agreed to produce a number of pages that should not have been redacted and Rivera's medical records. (*Id.* at 17−19.) Mr. Adelman advised that he reviewed and had no objection to the proposed ESI search terms and custodians and did not object to submitting them to the IT Department, but requested a date range. (*Id.* at 17−18.) Because Mr. Adelman did not have the opportunity to review all of the redactions to the "ASA Notes," due to other professional obligations, the conferral was continued to September 16, 2024. (*Id.* at 19−20.) On September 6, 2024, Defendant Officers provided Mr. Adelman with a proposed date range of January 2019 to August 2023. (*Id.* at 17.)

During the September 16th video conference, Mr. Adelman indicated that he would request a preliminary ESI search be run based upon the agreed search terms and custodians for the period of January 2019 to August 2023, and if necessary, Defendant Officers would consider narrowing the time period. (*Id.* at 15) Because counsel for the CCSAO was again unable to review redactions made to "ASA Notes," counsel agreed to continue the video conferral to September 30, 2024. (*Id..*) The September 30th video conferral was again rescheduled to allow Mr. Adelman time to review the "ASA Notes." (*Id.* at 12−15). On September 30th, Defendant Officers asked if Mr. Adelman had an update regarding the ESI search, to which he responded: "I'll find out more about making the email request tomorrow…" (*Id.* at 13−14.)

Ms. Fleming and Mr. Adelman conferred via video conference on October 9, 2024, during which Mr. Adelman advised that the CCSAO would be sending out a revised production of "ASA Notes."

(*Id.* at 8–15). Regarding the revised production, Mr. Adelman explained "[s]ome notes we kept redacted as they relate to trial prep, strategy, etc., others we unredacted as they were just facts, and others we adjusted the redactions so only part are redacted. For the redactions that remain we stand on the objections in our privilege log." (*Id.* at 6–7. *See also*, Revised Redactions ASA Notes, attached as **Ex. J**.) Defendant Officers received the revised production on October 23, 2024.

Defendant Officers followed up with Mr. Adelman regarding the ESI search on October 30, 2024, November 21, 2024, December 3, 2024, December 11, 2024 and January 16, 2025. (Email Correspondence with CCSAO, Ex. I at 1–6.) Mr. Adelman advised that he did not have an update in his October 30, 2024 email correspondence (*Id.* at 5), and defense counsel did not receive a response to her November 21, 2024 request for an update. On December 3rd, Mr. Adelman advised that he "may have an update…later that week" and that he would "reach out and let [Ms. Fleming] know." (*Id.* at 3.) Finally, on January 16, 2025, Mr. Adelman emailed Defendant Officers "I know we have search terms and custodians but did we settle on dates? Let me know." (*Id.* at 2.) In response, Ms. Fleming reminded Mr. Adelman that they previously agreed to the time period of January 2019 to August 2023 following their conferral in September 2024. (*Id.* at 1, 15.) To date, the CCSAO has not produced any ESI, nor has it objected to the production of said ESI or offered any claims of privilege.

Defendant Officers have attempted to resolve these disputes in good faith but are at an impasse with the CCSAO. As discussed below, court intervention is now necessary and the CCSAO must be ordered to produce: (1) the "ASA Notes"[1] and "Criminal History/LEADS Reports[2]" the CCSAO has refused to produce on the basis of a privilege; and (2) ESI from the search the CCSAO agreed to run in September 2024 based upon the search terms, custodians, and time period agreed to.

## ARGUMENT

---

[1] Documents bate-stamped CCSAO_000006, 14, 487, 584–87, 637–81, 683, 859, 942, 947–48, and 1044.
[2] Documents bate-stamped CCSAO_000050–55, 83–86, 1119–1126, and 1135–1149.

Rule 45 permits a party to issue a subpoena directing a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession." Fed. R. Civ. P. 45(a)(1)(A)(iii). "[T]hrough a Rule 45 subpoena, parties may seek discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Trustees of the Chi. Regional Council of Carpenters Pension Fund v. Drive Construction, Inc.*, 2023 WL 9315453, *2 (N.D. Ill. May 8, 2023). If the party served with the subpoena fails to comply, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

## I. The CCSAO Waived Any Claim of Privilege over "ASA Notes" by Supplying an Inadequate Privilege Log.

The CCSAO waived its claims of work product and deliberative process privilege over "ASA Notes" because it supplied an insufficient privilege log. If a subpoenaed non-party is "withholding subpoenaed information under a claim that it is privileged," then the non-party *must* (1) "expressly make the claim" and (2) "describe the nature of the withheld documents, communications, or tangible things *in a manner that*, without revealing information itself privileged or protected*, will enable the parties to assess the claim.*" Fed. R. Civ. P. 45 (e)(2)(A)(i)–(ii) (emphasis added); *Young v. City of Chi.*, 2017 WL 25170, *6 (N.D. Ill. Jan. 3, 2017) ("Rule 45(e) specifies additional requirements when a person withholds subpoenaed material based on a claim of privilege or work-product protection, including a requirement that the person expressly make the claim…and prepare a privilege log."); *Schaeffer v. City of Chi.*, No. 19 C 7711, 2020 WL 7395216, at *1, n.1 (N.D. Ill. Aug. 12, 2020) (collecting cases that hold "if any party or non-party submits a privilege log that does not comply with applicable law, then the failure to provide a proper privilege log may result in waiver.").

In this District, courts require "that a privilege log identify 'for each separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the

document is privileged.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (emphasis in original). Thus, the CCSAO's privilege log must identify the following information for each document it claims privilege over: the author, all recipients, if any, and their capacities, the subject matter of the document, the purpose of its production and an explanation as to why the material is privileged.

For example, the privilege log should say: "trial notes of Assistant State's Attorney [Name] made on or about [date or general timeframe] regarding [name of witness or issue]," "ASA [Name] notes of conversation with investigating officer [NAME]"—each according different treatment for purposes of production. In addition, the date or approximate date of the document should be clear, so Defendant Officers know whether the notes pertain to the initial criminal prosecution, subsequent post-conviction proceedings, or other proceedings or decisions. Finally, the privilege log should make clear whether the documents protect facts, opinions or some combination thereof. Here, the CCSAO's claims of privilege fall woefully short of this standard.

The below table illustrates the CCSAO's failure to detail its withholding of "ASA Notes" from its revised privilege log:

| Bate Stamped CCSAO_ | Description In Revised Privilege Log |
| --- | --- |
| 000006 | ASA Notes: Unknown ASA Author, Dates from September of 1996 to November 1997. Case status updates made by an ASA during trial. CCSAO deliberative process and work product. |
| 000014 | ASA Notes: Handwritten accounting by ASA "Forister" on an unknown date. Factual synopsis and interpretation of the case. CCSAO deliberative process and work product. |
| 000487 | ASA Notes: Unknown ASA author and date. Interpretation of filed materials and response prep. CCSAO deliberative process and work product. |
| 000584-587 | ASA Notes: Unknown ASA author and date. Handwritten trial prep notes consisting of factual notations and sequencing of events in the case. Something of a timeline. CCSAO deliberative process and work product. |
| 000637-681 | ASA Notes: Unknown ASA author and date. Summation of the background and some facts relating to the medical examiner on the case. Preparation for trial. CCSAO deliberative process and work product. |

| 000683 | ASA Notes: Trial notes by unknown ASA author on an unknown date pertaining to Elizabeth Burgos. Contains CCSAO impressions through viewership of testimony. CCSAO deliberative process and work product. |
| 000859 | ASA Notes: Unknown ASA author and date. Notes about trial prep and ASA progression of tasks. CCSAO deliberative process and work product. |
| 000942 | ASA Notes: Unknown ASA author and date. Notes about facts in the case for trial prep and argument prep purposes. CCSAO deliberative process and work product. |
| 000947-948 | ASA Notes: Unknown ASA author and date. Background to case and highlighting of issues coupled with argument prep using relevant caselaw. CCSAO deliberative process and work product. |
| 001044 | ASA Notes: Unknown ASA author and date. Notes pertaining to argument prep and the facts of the case. CCSAO deliberative process and work product. |

The CCSAO's log failed to identify the document's author, recipient, if any, its subject matter or the date it was created. (*See* Revised Privilege Log, Ex. H.) While some entries include phrases such as "trial prep," "argument prep," and "CCSAO impressions," these unhelpful characterizations appear to be guesses, and add nothing to the general claims of work product and deliberative process privilege. Without the descriptions delineated as required under Fed. R. Civ. P. 26(b)(5), the CCSAO cannot support its privilege assertions.

In addition, nothing in the log indicates in any way that the information contained in the redacted "ASA Notes" constitutes "pre-decisional" or "deliberative…communications that are part of the decision-making process of a governmental agency" as required for the privilege to apply. *Walls v. Vasselli*, No. 19 C 06768, 2022 WL 1004248, at *3 (N.D. Ill. April 4, 2022). Accordingly, this Court should find the CCSAO waived its claims of work product and deliberative process privilege over "ASA Notes" and order production of the same without redactions.

## II. The Work Product Privilege and Deliberative Process Privileges Do Not Shield "ASA Notes" From Discovery in This Case.

Waiver aside, neither the work product nor deliberative process privileges apply to "ASA Notes."

### A. The work product privilege does not apply to "ASA Notes."

The CCSAO cannot assert work product privilege over "ASA Notes" because it is not a party to the litigation. Federal Rule of Civil Procedure 26 protects the disclosure of documents "prepared in

anticipation of litigation or for trial by or for *another party or its representative*." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). Numerous courts in this district have held the CCSAO cannot assert the work product doctrine in analogous matters. *Walls*, 2022 WL 1004248, at *2 (holding that "the CCSAO may not claim work product protection over the redacted notes because it is not a party to this case."); *Hill v. City of Chi.*, No. 13 C 4847, 2015 WL 12844948, at *2−3 (N.D. Ill. May 28, 2015); *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, at *2 (N.D. Ill. Nov. 13, 1997); *Glass v. Vill. of Maywood*, No. 22 CV 164, 2023 WL 6461364, at 2 (N.D. Ill. Oct. 4, 2023).

This principal was reaffirmed in another reversed conviction case *Williams v. City of Chicago*. No. 22 CV 3773, 2023 WL 6213716, *1 (N.D. Ill. Sept. 25, 2023). There, the court found that the CCSAO, which had prosecuted the underlying criminal case, could not invoke the work product privilege because it was neither a party to the action nor did it have an attorney-client relationship with any of the parties to the civil action. *Id.* at *3. The court noted that "because the CCSAO is not an adversarial party in this case and the criminal matter has long since resolved, the purposes of work product protection … are not of significant concern" and declined "to stray from the clear line of cases holding that 'the work product doctrine does not protect a prosecutor's files in a subsequent, related civil action.'" *Id.* (internal citations and quotation marks omitted). This Court should similarly refuse "to stray from the clear line of cases holding that 'the work product doctrine does not protect a prosecutor's files in a subsequent, related civil action.'" *Id.*

Because the CCSAO cannot assert the work product privilege as a non-party, and alternatively Defendants have a substantial need for the "ASA Notes," the Court should order production of documents bate-stamped CCSAO_000006, 14, 487, 584−87, 637−81, 683, 859, 942, 947−48, 1044 without redactions.

### B. The deliberative process privilege does not apply to "ASA Notes."

As to the deliberative process privilege, this privilege does not apply over redactions to "ASA Notes" for three reasons: (1) the CCSAO failed to properly assert the privilege; (2) the redacted material doesn't fall within the confines of the privilege; and (3) even if it did, there is a particularized need for the "ASA Notes" to evaluate the claims and defenses in this case that outweighs the CCSAO's interest in withholding them.

The deliberative process privilege "protects communications that are part of the decision-making process of a governmental agency." *Walls*, 2022 WL 1004248, at *3. The deliberative process privilege is construed narrowly, *Saunders v. City of Chi.*, 12 C 9158, 2015 WL 4765424, at *12 (N.D. Ill. Aug. 12, 2015) (ordering the CCSAO to disclose notes in analogous case) and it is not absolute. *Bahena v. City of Chi.*, 2018 WL 2905747, *3-4 (N.D. Ill. June 11, 2018) (deliberative process can be overcome by showing of sufficient need.) Here, the CCSAO has failed to establish that the challenged redactions meet both requirements and its broad redactions fail to serve the privilege's purpose.

Courts conduct a two-step analysis to determine if the deliberative process privilege applies. The CCSAO must <u>first</u> establish that: "(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents." *Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (citing *Ferrell v. U.S. Dep't of Housing & Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). Assuming the CCSAO can establish a *prima facie* claim, the <u>second</u> step is to assess whether the moving party has a particularized need for the documents. *Id.*

Here, the CCSAO's department head did not make a formal claim of the privilege or provide an affidavit identifying the precise reasons for preserving the confidentiality of the "ASA Notes." The CCSAO also failed to specifically identify and describe the documents or explain how the redactions are pre-decisional and deliberative. As noted above, the revised log largely fails to identify the author(s)

of the "ASA Notes," the dates each note was authored or the decision(s) it relates to. (Revised Privilege Log, Ex. H at 1–3.)  Additionally, all of the descriptions are couched in conclusory generic terms, devoid of any meaningful context, and when stripped of this conclusory language, the redactions appear to have been made to information that is non-deliberative and factual in nature, falling outside the purview of the privilege. *See Enviro Tech Int'l, Inc. v. E.P.A.*, 371 F.3d 370, 374–75 (7th Cir. 2004) (explaining the privilege does not apply to purely factual information unless it is "inextricably intertwined" with deliberations).

By way of example, consider the following descriptions of redacted "ASA Notes:" (1) "Handwritten accounting by ASA 'Forister' on an unknown date. *Factual synopsis*…of the case;" (2) "Unknown ASA Author and date. Handwritten trial prep notes… of *factual notations and sequencing of events* in the case. Something of a time line;" and (3) "Unknown ASA Author and date. *Summation of the background and some facts*…" (Revised Privilege Log, Ex. H, at 1–2) (emphasis added). The CCSAO's assertion of deliberative process privilege wholly lacks the information and specificity required to meet the foundational requirements to claim such a privilege. *See Evans*, 231 F.R.D. 302 (2005) (finding that governmental agency failed to make a *prima facie* showing to support deliberative process privilege where it failed to submit an affidavit by a person in control of the documents and with personal knowledge of the reasons for asserting the privilege and there were no precise and certain reasons for assertion of the privilege). As such, the CCSAO cannot make a *prima facie* showing that the notes contain pre-decisional or deliberative information relating to the formulation of a policy, warranting disclosure. (*See* Order, *Cruz v. Guevara*, No. 23 C 4268 (N.D. Ill. April 10, 2024), attached as **Ex. K** at 5) (holding the CCSAO did not establish a *prima facie* case that the deliberative process privilege applied to "ASA notes" because it did not adequately describe the documents…").

### III.  Defendants' Substantial Need For The "ASA Notes" Overrides The CCSAO Privilege Claims.

Even if the CCSAO could assert the attorney work product privilege or establish a *prima facie* claim to the deliberative process privilege, which they failed to do, the privileges must give way in this case because Defendant have a particularized need for the "ASA Notes." Courts analyze five factors in determining whether a party has a "particularized need" for them:

(1)    the relevance of the documents to the litigation;
(2)    the availability of other evidence that would serve the same purpose as the documents sought;
(3)    the government's role in the litigation;
(4)    the seriousness of the litigation and the issues involved in it; and
(5)    the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies.

*Saunders*, 2015 WL 4765424, at \*9. All five factors favor disclosure.

Rivera is suing Defendants for his alleged wrongful prosecution and conviction. To defend against his claims that Defendant Officers fabricated and withheld exculpatory evidence, Defendants must know, without exception, what evidence the CCSAO had at the time of the prosecution, for if it had the information that Rivera claims was withheld, that provides a complete defense to his *Brady* claims. Defendants plainly have a substantial need for documents that inform the critical question of what the CCSAO possessed and what was tendered to Rivera's defense counsel. Rivera also brings malicious prosecution claims alleging Defendants "exerted influence to initiate, continue and perpetuate judicial proceedings against Plaintiff…" (Dkt. 1, Compl. ¶¶ 148−153, 179−184.)

To establish his malicious prosecution claim, Rivera must establish that Defendants "played a significant role in the plaintiff's prosecution." *Beaman v. Freesmeyer*, 433 Ill. Dec. 130, 131 N.E. 3d 488, 495 (Ill. 2019). For example, a law enforcement officer might be liable if he knowingly provides misinformation to a prosecutor, conceals exculpatory information, engages in wrongful or bad faith conduct instrumental in the initiation of the of the prosecution, or participates in the case so actively as to amount to advice and cooperation. (*Id.*) To rebut these claims, Defendants will be taking the depositions of former CCSAO felony review and trial prosecutors. These witnesses will no doubt

benefit from use of the notes to provide meaningful testimony about who knew what and when, and which of the Defendants, if any, they had contact with in a prosecution they handled almost 29 years ago. In other words, these materials are essential to the taking of these depositions.

The work product privilege is not absolute, and disclosure can be compelled where the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, there can be no dispute that Defendants have a substantial need for the "ASA Notes" as Rivera's claims rest on what happened during the prosecution of his criminal case twenty-nine years ago, and this is the only evidence that will shed light on what happened during the prosecution and when.

Indeed, the entirety of this case hinges on what happened in the underlying criminal prosecution. The CCSAO is the **_only_** entity that has the records reflecting exactly what occurred in the criminal prosecution, why it chose to vacate Rivera's conviction, and why it chose to not oppose his petition for certificate of innocence – issues that go to the very heart of Rivera's claims. *See Holmes v. Hernandez*, 221 F.Supp.3d 1011, 1021 (N.D. Ill. 2016) ("Where the government agency asserting the privilege is a party to the lawsuit, or its conduct bears on the plaintiff's claim, this factor weighs in favor of finding a particularized need.); *Ferguson v. City of Chi.*, 213 Ill. 2d 94, 102 (2004) (holding evidence about why the prosecutor chose to dismiss the case is especially relevant to plaintiff's state law malicious prosecution claim, which requires proof that the State's Attorney dropped the case "for reasons indicative of the plaintiff's innocence.")

At a minimum, this information is vital in evaluating Rivera's *Brady* and malicious prosecution claims. *See Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022) (holding that an officer's *Brady* obligations are discharged when the evidence is turned over to the prosecutor); *Colbert v. City of Chi.*, 851 F.3d 649, 655 (7th Cir. 2017) (holding that the plaintiff's malicious prosecution claim fails despite the defendant officer submitting a false report because the prosecutor's decision to indict was not

influenced by the false report). Further, the notes are relevant to refreshing the memories of non-party former prosecutors as to the actions they took during the underlying prosecution if they drafted the notes.

Additionally, information within the prosecutor notes, such as those that contemporaneously describe witness interviews, is unavailable from other evidence. For example, if a prosecutor interviewed a witness that had previously been interviewed by the police, and the witness claims the police used physical coercion to obtain a statement, then the tactics the police used are *Brady* material. *See, e.g., Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017) (holding that *Brady* required police to "disclose the details of the pressure and inducements they brought to bear to extract false statements" from three informants who testified against plaintiff at trial). However, because the ASA notes show the prosecutor learned of this information, the police are not liable even if the tactics were not documented in police reports. *See Moran*, 54 F.4th at 492. Plainly, ASA notes can contain critical information that is unavailable in other forms and are potentially dispositive.

Numerous former ASAs, including felony review, trial and post-conviction prosecutors are critical witnesses and the CCSAO was intricately involved in the decision not to oppose Rivera's post-conviction proceedings, which resulted in the conviction being vacated and the charges dismissed. *Holmes*, 221 F.Supp.3d at 1021. As to seriousness of the litigation, there can be no dispute. Rivera seeks monetary damages claiming Defendants withheld and fabricated evidence that led to his alleged wrongful conviction and incarceration. Finally, the CCSAO has not demonstrated that disclosing notes in a reversed conviction case involving a decades-old prosecution would "chill future deliberations within government agencies."

Accordingly, Defendant have established there is a particularized need for these records and this Court should order the CCSAO to produce the "ASA Notes" documents bate-stamped CCSAO_000006, 14, 487, 584–87, 637–81, 683, 859, 942, 947–48, 1044 without redactions or

alternatively, conduct an *in-camera* review of the materials to determine the propriety of the CCSAO's privilege claims.

### IV. The CCSAO has no Authority Under Federal Law to Withhold Criminal History/LEADS Reports.

The CCSAO also redacted from its response information described as "Criminal History/LEADS[3]" or "LEADS," contending such information is privileged pursuant to various state and federal statutes, specifically 20 Ill. Adm. Code 1240.80(d), 20 20 U.S.A. 534, and C.F.R. §§ 20.20, 20.21, 20.30 and 20.33. (Revised Privilege Log, Ex. H at 2, 4.) The CCSAO's reliance on these various statutes is flawed. Nothing in 20 Ill. Adm. Code 1240.80(d) creates a privilege belonging to the CCSAO—rather, the code only prohibits the use of LEADS data for personal purposes, prohibits the sale of LEADS data and prohibits the dissemination of LEADS data to individuals not authorized to have it.

Notwithstanding, the CCSAO points to no authority, neither state nor federal, that "would prevent the disclosure of these documents in this federal question civil rights lawsuit." *Schaeffer*, 2020 WL 7395217, at *2 (holding "LEADS data is not protected by any cognizable federal privilege authorizing the withholding of the documents at issue here"). Indeed, many courts in this district have rejected the CCSAO's argument and ordered disclosure of LEADS reports in federal discovery in analogous cases. (Order, *Cruz*, No. 23 C 4268 (N.D. Ill. April 10, 2024), Ex. K at 12) (granting motion to compel LEADS reports because the "CCSAO never attempts to explain how either of those statutes, or the state administrative regulations they authorize, limit federal civil discovery of LEADS information"); *Anderson v. City of Chi.*, No. 16 C 1963, 2019 WL 423144, at *3 (N.D. Ill. Feb. 4, 2019) (same); (Order, *Martinez v. Guevara*, No. 23 C 1741 (N.D. Ill. Nov. 15, 2024), attached as **Ex. L** at

---

[3] Law Enforcement Agencies Data System, or "LEADS," is a statewide computerized system that collects and then disseminates data, such as criminal history information, to designated agencies like the CPD or the CCSAO.

14–15) (rejecting the CCSAO's argument that it can withhold LEADS reports relying on 28 U.S.C. §§ 20.20 and 20.25).

As in the above cases, the CCSAO should be ordered to produce all "Criminal History/LEADS" reports, documents bate-stamped CCSAO_000050–55, 83–86, 1119–26, and 1135–49 without redactions.

## V. The CCSAO Should be Compelled to Produce ESI related to Rivera's Criminal Proceedings.

Defendant Officers' subpoena also requested certain ESI, including emails and electronic messages, between the CCSAO and its agents regarding Rivera, his criminal prosecution, post-conviction proceedings and COI proceedings. (*See* Subpoena, Ex. A, at ¶¶ 13–14.)

The ESI requested is important relevant material and critical to the defense in his case. The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *Trustees of the Chi. Reg. Council of Carpenters Pension Fund*, 2023 WL 9315453 at *2. "Relevance, particularly in the discovery phase, is a low bar to meet." *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers, Inc.*, No. 22 C 5757, 2023 WL 2974083, at *4 (N.D. Ill. Apr. 17, 2023). As discussed in §§ II(a)–(b) and §III *supra*, discovery into the materials in the possession of the CCSAO and what transpired during Rivera's underlying criminal investigation, prosecution and post-conviction proceedings is necessary to developing the factual record in this matter.

Because of the relevance of the materials, coupled with the fact that the CCSAO has not asserted privilege nor objected to the ESI search, this Court should find the CCSAO waived any claim of privilege, order the CCSAO to conduct the ESI search and produce all responsive materials in unredacted form. *See Glass*, 2023 WL 6461364, at *2 (finding waiver where CCSAO failed to assert any privilege at all "for roughly seven months between the date it received service of the subpoena and when it produced a privilege log and responsive documents).

15

## CONCLUSION

For the foregoing reasons, Defendant Officers respectfully request that this Honorable Court compel third-party CCSAO to comply with the subpoena and:

(1) Produce all "ASA Notes" in unredacted form (documents bate-stamped CCSAO_000006, 14, 487, 584–87, 637–81, 683, 859, 942, 947–48, 1044;

(2) Produce all records described as "Criminal History/LEADS Reports (documents bate-stamped CCSAO_000050–55, 83–86, 1119–26, and 1135–49); and

(3) Order the CCSAO to conduct the ESI search based upon the agreed search terms, custodians and time period and produce all responsive materials and for any other relief this Court deems appropriate.

Dated: February 25, 2025                    Respectfully Submitted,

/s/ Elizabeth R. Fleming                     /s/ Kelly A. Krauchun
ELIZABETH R. FLEMING, Atty                   KELLY A. KRAUCHAN
No. 6319166                                  Attorney for Defendant City of Chicago
Attorney for Defendant Officers
Halvorsen, Ricco, & Biebel                   Eileen E. Rosen
                                             Catherine M. Barber
James G. Sotos                               Theresa B. Carney
Josh M. Engquist                             Austin G. Rahe
Lisa Meador                                  Lauren Ferrise
Mark Smolens                                 Kelly A. Krauchun
Elizabeth Fleming                            Andrew J. Grill
Thomas Sotos                                 Rock Fusco & Connelly, LLC
The Sotos Law Firm, P.C.                     333 W. Wacker, 19th Floor
141 W. Jackson Blvd. #1240A                  Chicago, Illinois 60606
Chicago, IL 60604                            (312) 494-1000
(630)735-3303                                kkrauchun@rfclaw.com
efleming@jsotoslaw.com

/s/ Molly E. Boekeloo
MOLLY E. BOEKELOO
Attorney for Defendant Guevara

Timothy P. Scahill
Steven B. Borkan
Emily E. Schnidt

16

Molly E. Boekeloo
Whitney N. Hutchinson
Graham P. Miller
Borkan & Scahill
20 S Clark St # 1700
Chicago, IL 60603
(312) 580-1030

## <u>ATTORNEY CERTIFICATION</u>

Pursuant to Local Rule 37.2 and Magistrate Judge Heather K. McShain's Discovery Motion Requirements, undersigned counsel for Defendant Officers hereby certifies that Elizabeth R. Fleming, counsel for Defendant Officers, met and conferred with Mr. David Adelman, counsel for the Cook County State's Attorney's Office ("CCSAO") via videoconference on August 16, 2024 (11:00 CT), August 26, 2024 (11:00 CT), September 16, 2024 (11:00 CT) and October 9, 2024 (1:30 CT) in good faith to attempt to resolve issues with the CCSAO's response to Defendant Officers' subpoena requesting its file relating to the criminal investigation, prosecution, post-conviction investigation and proceedings, and certificate of innocence proceedings in the matter of *People v. Gamalier Rivera*, Case No: 96 CR 17939 (01) and claims of privilege. After consulting via video conference on the above dates and times, Ms. Fleming and Mr. Adelman were unable to reach an accord on: (1) the CCSAO's claims of the work product and deliberative process privileges over "ASA Notes;" (2) the CCSAO's claims of privilege over "Criminal History/LEADS Reports;" and (3) the production of electronically stored information ("ESI.")


/s/ Elizabeth R. Fleming

## **CERTIFICATE OF SERVICE**

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on February 25, 2025 I electronically filed the foregoing **Defendants Motion to Compel the Cook County State's Attorney's Office to Comply With Records Subpoena** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list.

***Attorneys for Plaintiff:***
Anand Swaminathan (anand@loevy.com)
Arthur R. Loevy (arthur@loevy.com)
Jonathan I. Loevy (jon@loevy.com)
Sean Starr (sean@loevy.com)
Steven Art (steve@loevy.com)
Annie D. Prossnitz (prossnitz@loevy.com)
Locke E. Bowman (locke@loevy.com)
Margaret Gould (gould@loevy.com)
Loevy & Loevy
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
P: (312) 243-5900

***Attorneys for the City of Chicago***
Eileen E. Rosen (erosen@rfclaw.com)
Andrew J. Grill (agrill@rfclaw.com)
Austin G. Rahe (arahe@rfclaw.com)
Catherine M. Barber (cbarber@rfclaw.com)
Lauren M. Ferrise (lferrise@rfclaw.com)
Theresa B. Carney (tcarney@rfclaw.com)
Kelly A. Krauchun (kkrauchun@rfclaw.com)
Rock, Fusco & Connelly
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
P: (312) 494-1000

***Attorneys for Reynaldo Guevara***
Steven B. Borkan (Sborkan@borkanscahill.com)
Timothy P. Scahill (tscahill@borkinscahill.com)
Graham P. Miller (gmiller@borkinscahill.com)
Emily E. Schnidt (eschnidt@borkinscahill.com)
Mischa Itchhaporia (mitchhaporia@borkanscahill.com)
Molly E. Boekeloo (mboekeloo@borkanscahill.com)
Amanda Guertler (aguertler@borkanscahill.com)
Krystal Gonzalez (kgonzalez@borkanscahill.com)
Christine Murray (cmurray@borkanscahill.com)
Andrea F. Checkai (acheckai@borkanscahill.com)
Drew Wycoff (dwycoff@borkanscahill.com)
Katherine E. Wilkie (kwilkie@borkanscahill.com)

Borkan & Scahill
20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: 312-580-1030

/s/ Elizabeth R. Fleming
ELIZABETH R. FLEMING, Atty No. 6319166