# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAMALIER RIVERA,<br><br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVERA, ET AL.,<br><br>Defendants. | No. 23 CV 1743<br><br>District Judge Chang<br><br>Magistrate Judge McShain |

## ORDER

Pending before the Court is plaintiff's motion to reconsider the Court's orders regarding Nicholas Gonzalez. [213]. For the following reasons, the motion is denied.

## Background

The pending motion arises out of the parties' long-running efforts to depose Gonzalez, a witness identified on each side's Rule 26(a) disclosures and who plaintiff has suggested may have committed the murder out of which the claims in the case arise. *See* [193-1] 5; [193-2] 9. The parties began seeking Gonzalez's deposition in August 2023, when plaintiff tried to serve a subpoena on Gonzalez and moved the Court to grant him questioning priority at the deposition. *See* [159] 2-3. These efforts were ongoing as of April 2, 2025, when the Court granted defendants' unopposed motion to serve Gonzalez by certified mail. [166]. In a May 12 joint status report, the parties explained that a subpoena sent by certified mail to Gonzalez, at an address on North Karlov Avenue in Chicago, *see* [159-4] 2, was returned "unclaimed." [178] 2-3. However, on May 27, a process server acting on behalf of defendant Guevara personally served Gonzalez with a subpoena at a different address, on West Haddon Avenue in Chicago. [193-5] 2 at ¶ 5. The process server confirmed that the person served with the subpoena matched a photograph of Gonzalez. [193] 2 at ¶ 6. Gonzalez's deposition was scheduled for June 17 at 1:00 p.m., but he failed to appear. [193-6] 4.

On July 17, 2025, defendants filed an unopposed motion for a rule to show cause regarding Gonzalez's failure to appear for his deposition. [193]. The undersigned granted the motion and ordered Gonzalez to appear for a deposition by August 15 or show cause why he should not be held in contempt of court. [200]. The Court also ordered defense counsel to serve Gonzalez with a copy of the motion for a

rule to show cause, the Court's order granting the motion, and a subpoena with a new deposition date and to file a certificate of compliance to confirm service of these documents on Gonzalez. [201]. Finally, the Court set an in-person show-cause hearing for August 21. [200, 205].

On August 8, Guevara's counsel filed a certificate of compliance reflecting that, "[a]fter multiple attempts to personally serve Mr. Gonzalez that were unsuccessful, Defendant Guevara obtained substitute service on Mr. Gonzalez by serving his niece, Harmony DeJesus, who confirmed that Mr. Gonzalez resides with her." [204]. Attached to the certificate was an affidavit from the process server, who stated that he had served the subpoena and related materials at the Haddon Avenue address on August 7 after DeJesus "identified herself as a niece of Nicholas Gonzalez and confirmed that she was a member of the household." [204-1] 2. The amended subpoena set Gonzalez's deposition for August 12, but Gonzalez did not appear. [206, 207].

The Court proceeded with the show-cause hearing on August 21, at which Gonzalez again failed to appear. *See* [218-1] 5. The undersigned found Gonzalez in contempt based on his failure to appear for the show-cause hearing and the August 12 deposition. [*Id.*] 7-8. Defendants orally moved the Court for a writ of body attachment, which the Court took under advisement. [*Id.*] 8-9. The Court indicated that it would allow Gonzalez a final chance to appear for a deposition but cautioned him that, if he again failed to appear for his duly scheduled deposition, "the Court will consider issuing a writ of body attachment, which means that the U.S. Marshals Service will detain Mr. Gonzalez and bring him to court for his deposition." [209].

Plaintiff filed the pending motion to reconsider on August 27. According to the motion, plaintiff's counsel re-examined the record of defendants' service on process on Gonzalez in August and identified a purported discrepancy: defendant represented in the certificate of compliance that "Harmony DeJesus 'confirmed that Gonzalez resides with her' at the [ ] Haddon Avenue address," but the process server's affidavit stated only that "Harmony DeJesus 'confirmed that she was a member of the household.'" [213] 2 at ¶ 5 (internal emphasis omitted). On August 26, plaintiff's counsel brought this issue to defense counsel's attention, who responded that she and her process server had spoken with DeJesus by telephone, and it was during that call that DeJesus "confirmed that Gonzalez resides with her." [*Id.*]. Defense counsel also explained that she had omitted the details of the phone call from the certificate of compliance based on work-product concerns. [*Id.*].

After this conferral with defense counsel, plaintiff's counsel obtained contact information for DeJesus and spoke with her on August 26. [213] 2 at ¶ 7. During this conversation, DeJesus told plaintiff's counsel the following:

2

> DeJesus was visited at the Haddon Avenue address in the evening on August 7 by a man who asked her about her uncle Nicholas Gonzalez . . . Ms. DeJesus told the man that Nicholas Gonzlaez did not live there, had not lived there for years, that she did not talk with her uncle, and that she had no way or [sic] reaching her uncle. The man then called a woman and put the phone on speakerphone. The woman asked Ms. DeJesus about Nicholas Gonzalez, and she repeated that he did not live at that address and that she had no way of contact [sic] him. The woman gave Ms. DeJesus a phone number to try her uncle on. Ms. DeJesus called the number but no one answered. The man then gave Ms. DeJesus a sealed envelope and told her that if they could not get in contact with Mr. Gonzalez the federal marshals would have to come get him. Ms. DeJesus reiterated that her uncle did not live at that address and had not for years.

[*Id.*] 2-3; *see also* [217].

Citing DeJesus's contradicting statements, plaintiff contends that there is an unresolved factual dispute whether Gonzalez has been properly served. [213] 3.

Defendant Guevara opposes the motion. [218]. He first argues that plaintiff's motion does not meet the standard for reconsideration based on newly discovered evidence. [*Id.*] 3-4. While defendant recognizes that the motion is based on statements that DeJesus made after the Court found Gonzalez in contempt, defendant contends that plaintiff was not diligent in attempting to contact DeJesus or otherwise investigate defendant's service of the subpoena on her. [*Id.*] 7. Defendant also argues that the mere fact that DeJesus has, "after the fact, provided contradictory statements" about whether Gonzalez lives at the Haddon Avenue residence is insufficient to reconsider the Court's decision to hold Gonzalez in contempt. [*Id.*] 8.

## Legal Standards

### A. Motion to Reconsider

"[C]ourts in this District have construed motions to reconsider interlocutory orders," such as the Court's order finding Gonzalez in contempt, *see Resolution Trust Corp. v. Ruggiero*, 987 F.2d 420, 421 (7th Cir. 1993), "as arising under Rule 54(b)." *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2016). As relevant here, a motion for reconsideration brought pursuant to Rule 54(b) may be granted where "there has been a controlling or significant change in the facts of the case." *Id.* "[U]nder ordinary circumstances, motions for reconsideration are disfavored–and for sound institutional reasons." *Stagger v. Experian Info. Sols.*, No. 21 C 2001, 2021 WL 5564867, at *1 (N.D. Ill. Nov. 29, 2021) (internal citations omitted). "A motion for reconsideration of a discovery order is even more limited than one for reconsideration of a substantive ruling, as discovery rulings involve matters of discretion." *Id.*

3

**B. Service of Subpoena**

Civil Rule 45 provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person[.]" Fed. R. Civ. P. 45(b)(1). "When delivery options other than USPS certified mail or personal service are used, however, courts within the Seventh Circuit must determine if the method was a sensible option that satisfies the requirement of delivering a copy to the named person." *Little v. J.B. Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *3 (N.D. Ill. Apr. 22, 2020). "[A]n alternative means of serving a subpoena can be appropriate once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort," including cases "in which the person on whom service is sought attempts to evade a process server." *Id.*, at *4. The Seventh Circuit has held that "leaving a subpoena at the residence where its intended recipient is believed to reside is sufficient where such belief is supported by the evidence and the evidence demonstrates that the intended recipient may be evading service." *Brewer v. Town of Eagle*, 663 F. Supp. 3d 939, 945 (E.D. Wis. 2023) (citing *York Group, Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 402 (7th Cir. 2011)).

**Discussion**

The Court declines to reconsider its ruling holding Gonzalez in contempt for three reasons.

First, the Court recognizes that DeJesus gave conflicting statements about whether Gonzalez resides at the Haddon Avenue residence to plaintiff's counsel and defendant's counsel. But the Court does not need to resolve that conflict because, even without DeJesus's statement that Gonzalez lives at the Haddon Avenue address, the record is sufficient to find that Gonzalez likely resides there.

Most importantly, defendant Guevara personally served Gonzalez with a subpoena at this address on May 27. *See* [193-5] 2. The process server's affidavit reflects that he was "certain" that the individual whom he served was Gonzalez "because the individual [he] served matched the photograph of Gonzalez" that had been provided to him. [218-2] 2. Furthermore, defendant has introduced evidence that Gonzalez is the taxpayer associated with the Haddon Avenue residence and that, as of September 2014, he remained liable on the mortgage associated with the property. *See* [218-5] 2-3 (warranty deed reflecting that Haddon Avenue property was conveyed to Gonazlez in June 2004); [218-6] 2-3 (assignment of Haddon Avenue mortgage, dated September 2014, identifying Gonzalez as mortgagor associated with property). Finally, there is no dispute that DeJesus identified herself as both Gonzalez's niece and, when the process server encountered her at the Haddon Avenue residence, as a "member of the household." [204-1] 2; [213] 2 at ¶ 7. For these reasons, defendant's claim that Gonzalez resides at the Haddon Avenue address, such that it was proper

4

to attempt substitute service on Gonzalez at that location, was "supported by the evidence." *Brewer*, 663 F. Supp. 3d at 945.

Second, defendants properly effected substitute service on Gonzalez by leaving a copy of the subpoena (and the other documents required by the Court's minute entry) with his niece at the Haddon Avenue address.

As noted above, "alternative means of serving a subpoena can be appropriate once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort[.]" *Little*, 2020 WL 1939358, at *4. Here, defendant's process server made three unsuccessful attempts to serve Gonzalez in August with the second subpoena and related documents. The process server "observed activity from within" on each occasion but no one answered the door, which suggests that someone was inside and was potentially trying to evade service of the subpoena. [218-2] 3 at ¶¶ 7-9. On a fourth attempt, the process server spoke with DeJesus, who identified herself as a "niece of Gonzalez, and a member of the household," and he left the subpoena and other documents with her. [*Id.*] 3 at ¶ 10. Given the evidence discussed above establishing that Gonzalez likely resided at the Haddon Avenue address, the Court finds that defendant made a diligent effort to effect service that was reasonably calculated to inform Gonzalez of his need to appear for a deposition–something Gonzalez would already have known after being personally served with the first subpoena in May.[1] *See AP Elec., Inc. v. Oakland Automation, LLC*, No. 23-11342, 2024 WL 4231194, at *1 (E.D. Mich. Sept. 18, 2024) (authorizing service by alternative means where process server confirmed deponent's address via public records search and "made three unsuccessful attempts to serve Cuccaro at his home and left behind a business card to which Cuccaro has not responded"); *see also Little*, 2020 WL 1939358, at *5 ("Rule 45 does not require personal service, but rather requires service reasonably calculated to insure receipt of the subpoena by the witness.") (internal quotation marks omitted).

Third, the Court agrees with defendant that DeJesus's contradictory statements do not constitute newly discovered evidence for purposes of a motion to reconsider.

---

[1] The Court's decision to hold Gonzalez in contempt is independently supported by Gonzalez's failure to comply with the May subpoena. After all, defendants' motion for a rule to show cause was predicated on Gonzalez's failure to comply with that subpoena, and the record before the Court established that Gonzalez himself had been personally served with that subpoena. *See Botello v. Lill*, Case No. 21 CV 4650, 2023 WL 415545, at *2 (N.D. Ill. Jan. 25, 2023) (court stating, in case where one subpoena was properly served on witness but questions remained as to whether service of second subpoena was proper, that witness "has failed to comply with at least one validly served subpoena and the Court's order and the Court would be within its discretion to hold him in contempt").

5

"To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that this evidence was newly discovered or unknown to it, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 921 (N.D. Ill. 2006). Here, plaintiff's motion is silent as to why plaintiff took no action to investigate or challenge defendant's representation that he had served Gonzalez via substitute service on DeJesus between the time that defendant's certificate of service was filed, on August 8, and August 26, when plaintiff's counsel first spoke with DeJesus on the phone. Plaintiff contends that certain statements made by defense counsel during the show-cause hearing caused plaintiff to revisit the record surrounding service of the subpoena. *See* [213] 2 at 4-5. During the show-cause hearing, defense counsel mistakenly stated that the Court had granted leave to serve Gonzalez by alternative means. *See* [218-1] 12-13. Defense counsel quickly acknowledged that she had confused a separate motion, relating to service of a subpoena on a different witness, with the motion relating to Gonzalez, and the record was immediately corrected. [*Id.*]. The Court does not follow why this statement would have prompted plaintiff to reexamine the record of defendant's attempts to serve Gonzalez at the Haddon Avenue address. In any event, to the extent that plaintiff contends that there was a discrepancy between defendant's certificate of service and the process server's affidavit, that discrepancy would have been apparent as of August 8, when both documents were filed on the docket. Because plaintiff had ample opportunity to investigate the claimed discrepancy before the Court found Gonzalez in contempt, plaintiff cannot show that he was reasonably diligent in attempting to uncover the facts on which his motion is based. The Court accordingly denies the motion to reconsider for this independent reason as well.

**Conclusion**

Plaintiff's motion to reconsider [213] is denied. By September 25, 2025, the parties shall submit a proposed order memorializing the Court's ruling that Gonzalez is in contempt of court and advising Gonzalez that, if he fails to appear for his deposition (on a date to be determined by agreement of the parties), the Court will issue a writ of body attachment and the U.S. Marshals Service will detain Mr. Gonzalez, bring him to the federal courthouse in Chicago, and keep him in custody until arrangements can be made to complete his deposition. Defendant Guevara shall promptly serve Gonzalez with this order, the Court's contempt order, and a fresh subpoena for Gonzalez's deposition. A joint status report is due by October 10, 2025, to update the Court on the status of Gonzalez's deposition.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 23, 2025**